

July 31, 2019

**CONFIDENTIAL**

**VIA FEDEX**

**Jack J. Carriglio**
Direct Phone    312-474-4477
Direct Fax        312-706-9704
jcarriglio@cozen.com

David Hyman
General Counsel and Secretary
Netflix, Inc.
100 Winchester Circle
Los Gatos, CA 95032

Re:    **John E. Reid and Associates, Inc. v. Netflix, Inc.**

Dear Mr. Hyman:

       My law firm and I have been retained by John E. Reid and Associates, Inc. ("Reid") to pursue claims including defamation against Netflix, Inc. ("Netflix") and other persons responsible. Reid is a company that for many years has provided training programs and other services domestically and abroad to law enforcement agencies, all branches of the United States military and intelligence community, and businesses as to interview and interrogation measures. The "Reid Technique" ® of interviewing and interrogation has been the most widely used approach as to the questioning of subject persons.

       On May 31, 2019, Netfix aired a web television series entitled, "When They See Us", a program that purported to portray true events surrounding what is known as the "Central Park Jogger Case". The series depicted interrogations, confessions, convictions and imprisonments of five defendants regarding the rape and assault of a victim in 1989. The program also reflected a subsequent re-investigation of the case, the withdrawal of charges, and release of the five defendants from prison. On June 25, 2019, Netflix announced that the series had been streamed by over 23 million viewers within its first month of release.

       In Episode 4 of "When They See Us" at the timeline of 1 hour, 5 minutes, 45 seconds, there begins a portrayed meeting and discussion among Michael Sheehan, a New York City detective who had worked on the Central Park Jogger Case and who had been involved in eliciting defendants' confessions, Nancy Ryan, a Manhattan Assistant District Attorney who oversaw the re-investigation leading to the dismissal of the charges against the defendants, and another person, identified as a "Man", who appears to be assisting Ryan with her discussion with Sheehan.

       While the date of the purported discussion among Sheehan, Ryan and the "Man" is not reflected, it appears to be in or near 2002, the year in which new evidence as to the crime was discovered (a confession and DNA evidence as to a perpetuator other than the five original defendants). Ryan is portrayed as informing Sheehan of the new evidence and questioning the adequacy of his investigation and defendants' confessions. To which, Sheehan allegedly replied:

EXHIBIT 1

David Hyman
July 31, 2019
Page 2

---

> "They gave statements that I believe were true." (1 hour, 6 minutes, 58 seconds).

The "Man" purportedly assisting Ryan then states:

> "You squeezed statements out of them after 42 hours of questioning and coercing, without food, bathroom breaks, withholding parental supervision. The Reid Technique has been universally rejected. That's truth to you". (1 hour, 6 minutes, 59 seconds – 1 hour, 7 minutes, 13 seconds).

Netflix has falsely disparaged Reid. First the statements made correlate the Reid Technique of interrogation with squeezing statements from subjects after "42 hours of questioning and coercing without food, bathroom breaks, withholding parental supervision". Second, the statements falsely describe the Reid Technique as having been "universally rejected".

The Reid Technique has not advised interviewers of subjects to engage in unduly long and continuous hours of interrogation, coercion, deprivation of food or bathroom breaks, or withholding parental supervision for minors. Instead the Reid Technique has taught core principles including:

- Always conduct interviews and interrogations in accordance with the guidelines established by the courts
- Do not make any promises of leniency
- Do not threaten the subject with any physical harm or inevitable consequences
- Do not deny the subject any of their rights
- Do not deny the subject the opportunity to satisfy their physical needs
- Always treat the subject with dignity and respect
- Do not conduct excessively long interrogations
- Exercise caution when interrogating juveniles or suspects with a lower intelligence or mental impairments.

The Reid Technique has not been "universally rejected". It has been the widely accepted regime for the interviewing or interrogation of subjects. It has been viewed by many courts as a legal method of interrogation in cases that have rejected claims that confessions were coerced. Reid's professionals have been frequent expert witnesses in courts to opine as to the use of the Reid Technique and to reflect where interviewers deviated from the format. The Reid Technique has been continuously used in the United States and other countries. It has been employed by various United Stated federal law enforcement authorities, a multitude of state and local police, and many public and private companies in connection with internal investigations and human resource matters. Obviously, the Reid Technique has not been "universally rejected".

The statements Netflix made about the Reid Technique in "When They See Us" are false and defamatory per se as to Reid and its business and profession. Netflix disparaged the services and business of Reid by false and misleading representation of fact. And Netflix also made the defamatory statements with knowledge of their deceptive character and with actual malice. Netflix knew the statements were untrue and made them in reckless disregard of their falsity.

David Hyman
July 31, 2019
Page 3

---

In 2015, Netflix streamed, "Making A Murderer, Part 2" and the series has continuously been aired through today. That program purports to portray true events that included a confession and criminal conviction of Brendan Dassey. A focus of the series is whether the confession was coerced and improper because of the techniques of the interrogators and Dassey's being a minor with disabilities.

Episode 2 of "Making A Murderer, Part 2" includes a review of the alleged coercive nature of the Dassey confession and the missteps of the interviewers. Netflix uses attorneys, Laura Nirider and Steven Drizin, of the Northwestern University School of Law Center on Wrongful Convictions, to point out errors of the interrogators that allegedly brought about a coerced and involuntary confession from Dassey. They refer to Reid and the Reid Technique, distribute to their audience a hand-out of the Reid Technique, and highlight that the interrogators of Dassey allegedly coerced the confession because they did not follow the Reid Technique. The statements by Nirider include:

> "We want to talk today about the three errors that occur during police investigation that can cause false confessions to happen.
>
> The first one is the misclassification error.
>
> Officers making wrong assumptions about whether somebody is lying and therefore guilty.
>
> Police are trained to watch the ways in which people answer questions, to read their body language, to notice their choice of words.
>
> This is what's referred to as 'behavioral analysis'.
>
> And all it takes is proper training for a police officer to turn into a human lie detector."

****

> "This is a handout that is used by a company called John E. Reid & Associates.
>
> They developed the most widely used interrogation technique in the country.
>
> This is the slide of characteristics that are supposed to be shown by people who are lying. Let's look.
>
> It says 'slouched'.
>
> Here's a screenshot of Brendan's interrogation. He's slouched.
>
> 'Hand over mouth or eyes.' Sure enough.
>
> 'Rigid and immobile.'
>
> And as for these verbal things, somebody who says, 'I don't know' must be lying? Let me tell you, if there's one thing Brendan Dassey said hundreds of times during that interrogation, it's 'I don't know'.

His ability to interact with other people is limited.

But of course it feeds right into these false narratives that officers are trained in. Somebody who can't make eye contact? It must mean they're lying, that they're guilty.

This failure to look people in the eye, this withdrawing during social situations, this is his disability, and I think it also is the misclassification error.

Then there's the coercion error.

Once you get that wrong person in the interrogation room, how are they convinced to say something so dramatically against their self-interest?"

\*\*\*\*

Steven Drizin adds:

At the beginning of an interrogation, an innocent person's confidence that they will emerge from the interrogation process unharmed is sky-high.

But the goal of interrogation is to bring that confidence level down."

\*\*\*\*

"False evidence ploys.

Telling the suspect over and over again, 'we already know'.

John E. Reid & Associates cautions police officers, 'Deceptive tactics should not ordinarily be used with individuals who have significant mental limitations or with youthful suspects of low social maturity'."

\*\*\*\*

Laura Nirider states:

"He says, 'There's all this evidence against me. He's not believing me.'

'What am I going to do?' This is a serious problem.

'What am I going to do?' And that's when interrogators are trained to give a suspect an out.

Drizin says:

Did you want to participate in the rape, or did your uncle force you? The suggestion is, if you accept the less heinous version, that you will be treated more leniently."

\*\*\*\*

David Hyman
July 31, 2019
Page 5

---

> "Brendan here is a 16-year-old who functions at a much lower level than your average 16-year-old.
>
> So he actually thinks, 'If I tell them what they want to hear, I'm gonna go home'."

\*\*\*\*

> "While getting an admission is powerful evidence, what they need to get a conviction is to have the suspect give the police officer the details of the crime that only the true perpetrator would know.
>
> Now, this is a real problem for an innocent person.
>
> How does that happen? Well, it happens through the third error, which is the contamination error. Fact feeding.
>
> John E. Reid & Associates tells investigators that they should hold back some facts, because if the suspect can give you those facts, then you have a pretty good idea that what the suspect is telling you is true.
>
> What else happens to her in her head? These officers fed him the three critical facts that were not publicly released before Brendan's interrogation: Teresa Halbach was shot in the head, her personal items were found in a burn barrel on the Avery salvage yard, and the fact that someone went underneath the hood of the car and did something with the engine."

\*\*\*\*

> "Contamination occurs when investigators grow frustrated with an innocent person's inability to give them those facts.
>
> They wanted this information in the worst way. And they got it in the worst way.
>
> Brendan has confessed.
>
> They've got what they think they need.
>
> They have that narrative, a horrific narrative."

Netflix knows that the Reid Technique has been the most widely accepted interrogation technique in the United States and the benchmark for reviewing whether confessions were appropriate. Episode 2 of "Making A Murderer, Part 2" in fact points out where the Dassey interviewers conducted an improper interrogation that brought about an alleged coercive confession because they had not followed the Reid Technique.

When Netflix streamed "When They See Us" and correlated the Reid Technique with the coercive tactics employed in the interrogations in the Central Park Joggers Case, Netflix knew of the falsity of the claim given what it had earlier recognized in "Making a Murdered, Part 2". And the Netflix statement that the Reid Technique had been "universally rejected" was also known to be false in light of what was reported in the "Making a Murderer, Part 2". There was knowledge

David Hyman
July 31, 2019
Page 6

---

of falsity and, at a minimum, a reckless disregard for the truth in the fabricated and irresponsible statements by Netflix in "When They See Us" as to Reid and the Reid Technique.

Netflix has defamed and placed Reid in a false light. Netflix's conduct is also a deceptive trade practice under Illinois law.

While Netflix has profited greatly from "When They See Us", Reid has been damaged in its business and reputation. The damage is continuing as the defamatory content of "When They See Us" is available on demand and the series is still being viewed.

Reid demands that Netflix immediately delete from the on demand version of "When They See Us" the aforementioned defamatory statements. Reid demands that Netflix issue a written retraction of the defamatory statements. While such measures will not eliminate the damages to which Reid will be entitled to recover, they may be a mitigating factor as to further damages that Reid will sustain.

Also, Reid demands that Netflix place a "litigation hold" and preserve all documents within its possession or control as to Reid, the Reid Technique, "When They See Us" and "Making A Murderer" (Parts 1 and 2). The term "documents" should be read in its broadest sense, includes electronically stored information such as emails, text messages and voice mails, and, as to the broadcasts, includes out-takes.

I request a response to this letter. Any communications you or your counsel wish to have with Reid should be directed to me.

Very truly yours,

Jack J. Carriglio

JJC:ldh

cc:   Joseph P. Buckley, President
      John E. Reid and Associates, Inc.