**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN E. REID AND ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-06781 |
| v. ) | |
| ) | Honorable Manish Shah |
| NETFLIX, INC., AVA DUVERNAY, and ) | |
| ARRAY ALLIANCE, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS AVA DUVERNAY'S AND ARRAY ALLIANCE, INC.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

Natalie J. Spears
Gregory R. Naron
Jacqueline A. Giannini
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com
jacqui.giannini@dentons.com

*Attorneys for Defendants Ava DuVernay
and Array Alliance, Inc.*

This Court lacks personal jurisdiction over Defendants Ava DuVernay ("DuVernay") and Array Alliance, Inc. ("Array Alliance") (collectively, "DuVernay Defendants"), neither of whom has sufficient minimum contacts with Illinois. Plaintiff John E. Reid & Associates, Inc. ("Reid"), an Illinois corporation, alleges defamation and other causes of action against Netflix, Inc. ("Netflix"), DuVernay and Array Alliance based on a single-line in the four-part Netflix series *When They See Us* (the "Series"). The Series focuses on the wrongful conviction and subsequent exoneration of five teenage boys for the brutal rape of a woman in Central Park in 1989. All of the events depicted took place in New York—the crime of which the teenagers were falsely accused, their trial in New York state court and their incarceration in New York state prisons. The Series was researched and written by DuVernay and other writers in New York, California and Georgia, and was filmed entirely in New York. The Series has nothing to do with Illinois. And neither DuVernay, nor Array Alliance, have *any* connection to Illinois related to Plaintiff's claims.

Plaintiff's attempt to assert jurisdiction by lumping DuVernay and Array Alliance together with Netflix, which distributed the Series, is entirely inappropriate; it is hornbook law that in personal jurisdiction inquiries, each defendant's contacts with the forum state must be assessed individually. Nor does the fact that Plaintiff is located in Illinois establish jurisdiction. Under controlling Supreme Court and Seventh Circuit precedent, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S 277, 285 (2014). There simply is no basis for asserting jurisdiction in Illinois over the DuVernay Defendants; and they therefore request that this Court dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(2).[1]

---

[1] Netflix, the distributor of the Series, does not challenge the Court's exercise of personal jurisdiction over the company, and has separately moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as a matter of law. If the Court decides not to dismiss DuVernay and Array Alliance from this case, they will join in Netflix's Motion to Dismiss.

**FACTUAL BACKGROUND**

*The Netflix Film Series, When They See Us.* The critically-acclaimed Series *When They See Us* was released by Netflix in May 2019 and distributed worldwide through Netflix's subscription-based Internet streaming service. (First Amended Complaint ("FAC") at ¶ 4.) The Series follows the arrest, conviction, imprisonment and subsequent exoneration of the five teenage boys for the 1989 rape of a jogger in Central Park in New York City. The boys, all New York City residents, were arrested by New York City police officers and tried in New York state court. Each of them served time in New York state prison before ultimately being exonerated when an unrelated man confessed to the rape and attack for which they had been wrongfully convicted. Following their exoneration, the men brought and settled a civil lawsuit against the City of New York.

*Ava DuVernay.* Defendant Ava DuVernay is an award-winning film writer, producer and director. (Declaration of Ava DuVernay ("DuVernay Decl.") at ¶ 1.) DuVernay lives and works in California. (*Id.*) She is the director and one of the writers and executive producers of the Series at issue in this litigation. (*Id.* at ¶ 3; FAC at ¶ 21.) DuVernay researched and wrote the script for the Series from California, New York and Georgia; and the Series was filmed entirely in New York. (DuVernay Decl. at ¶ 4.) Post-production on the Series took place in California. (*Id.*) DuVernay did not travel to Illinois in connection with the Series and did not contact anyone in Illinois in connection with the Series or for her research and writing of the Series. (*Id.* at ¶ 5.)

*Array Alliance, Inc.* Array Alliance is a Delaware non-profit, which utilizes mentorship, education and grant-making to foster a sense of community and elevate the profile of all women and people of color in the film and television industry. (*Id.* at ¶ 10.) Array Alliance, which was founded by DuVernay, is headquartered in California and has no offices or employees in Illinois,

2

nor any property or business in Illinois. (*Id*. at ¶ 9) Array had no involvement in the creation, production or distribution of the Series. (*Id*. at ¶ 11.) The "Array" logo that appears at the end of the credits for the Series is not a reference to Array Alliance, but is for a different, legally separate, company. (*Id*. at ¶ 12.)

*Plaintiff Reid and The First Amended Complaint.* Plaintiff Reid, headquartered in Illinois, alleges it is the "leading law enforcement training firm" in the United States and has "developed the most widely used interrogation technique in the country." (*Id.* at ¶¶ 19, 40, 52, 53.) Plaintiff alleges it has trained every branch of the Unites States Military, and has presented in the "United States, Canada, Europe, Asia, and the Middle East." (*Id.* at ¶ 19.)

The FAC alleges nearly-identical counts against Ms. DuVernay and Array as it does against Netflix. The basis of Plaintiff's claim is a passing reference to "The Reid Technique" in 30 seconds of dialogue in part four of the Series. (*Id.* at ¶ 10.) The Series does not mention Illinois or Plaintiff John E. Reid and Associates, Inc. by name.

Plaintiff attempts to establish personal jurisdiction over DuVernay and Array Alliance in the FAC based on conclusory and unsupported allegations that they "transacted business and committed tortious acts within the State of Illinois that are the subject of this action." (*Id*. at ¶¶ 24-25.) The accompanying declaration of Defendant DuVernay establishes that those allegations are baseless, and cannot form the basis for personal jurisdiction, let alone a *prima facie* case. Further, Plaintiff's self-serving allegation that the "DuVernay Defendants knew that the effects of their defamatory and disparaging statements about Reid and the Reid Technique would be felt by Reid in Illinois" (*id*. at ¶¶ 83-86) is insufficient to establish personal jurisdiction under governing Supreme Court and Seventh Circuit precedent.

3

## ARGUMENT

This Court lacks personal jurisdiction over DuVernay and Array Alliance. A single passing reference to Plaintiff's nationally-licensed interrogation method—"The Reid Technique"—in the fourth episode of the Series is simply not sufficient to confer personal jurisdiction in Illinois over DuVernay and Array Alliance, who otherwise have no relevant connection to Illinois and were not directly responsible for the distribution of the Series in Illinois (or elsewhere). The Series itself has nothing to do with Illinois; it is centered around events that took place entirely in New York, and was written, produced and filmed in New York and California.

The Illinois long-arm statute is "coextensive with federal due process requirements . . ."; accordingly, the traditional "two-step inquiry collapses into one: whether the exercise of personal jurisdiction over the defendants comports with constitutional due process." *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 781 (N.D. Ill. 2009). The answer is no with respect to DuVernay and Array Alliance. Under the well-established due process analysis, specific jurisdiction[2] is appropriate only if "(1) defendants purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their activities at the state; (2) the alleged injury arose from defendants' forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with traditional notions of fair play and substantial justice." *Ratliff v. Celadon Trucking Servs.*, Inc., No. 17 CV 7163, 2018 WL 1911797, at *4 (N.D. Ill. Apr. 23, 2018) (Shah, J.). None of these requirements are met with respect to DuVernay and Array Alliance, whose contacts with the forum state must be considered *individually*.

---

[2] The FAC does not allege, and Plaintiff cannot show, that either DuVernay or Array Alliance are subject to general jurisdiction in Illinois. Defendants thus address only specific jurisdiction.

4

### A. Netflix's Contacts with Illinois Cannot Be Imputed to DuVernay and Array Alliance.

The Amended Complaint alleges that "the DuVernay Defendants—in collaboration with Netflix—published the false statements in *When They See Us*[.]" (FAC at ¶ 80.) This bare allegation of publication, however, cannot serve to create a basis for personal jurisdiction. DuVernay and Array Alliance did not distribute the Series (*see* DuVernay Decl. at ¶¶ 6, 11); Netflix did. And Netflix's conduct in distributing the Series cannot be attributed to the DuVernay Defendants.

"Controlling case law has long made clear that in personal jurisdiction inquiries, '[e]ach defendant's contacts with the forum State must be assessed individually.'" *AFI Holdings of Illinois, Inc. v. Nat'l Broad. Co.*, 239 F. Supp. 3d 1097, 1101 (N.D. Ill. 2017) (citations omitted). In an illustrative case involving a nationally distributed film, this Court held that "Twentieth Century Fox's efforts to distribute the film in Illinois cannot be imputed to [producers] Witherspoon and Papandrea on the basis of any independent contribution they made to the film's production." *Weller v. Flynn*, 312 F. Supp. 3d 706, 718 (N.D. Ill. 2018) (dismissing producers for lack of personal jurisdiction). The same was true in *Colo'n v. Akil*, 449 F. App'x 511 (7th Cir. 2011). There, the Seventh Circuit affirmed that plaintiff "failed to show that the defendants intentionally aimed their conduct at Indiana because she submitted no evidence that any of the defendants had anything to do with the Indiana broadcast of" the allegedly infringing show. *Id*. at 514. Here too, when considering *only* the conduct of DuVernay and Array Alliance, as required, the sufficient contacts needed to establish personal jurisdiction are utterly absent, as shown in further detail below.

5

### B. The Exercise of Personal Jurisdiction Over DuVernay and Array Alliance Individually Fails Every Requirement of the Due Process Test.

#### 1. Plaintiff's Claims Do Not "Arise Out of or Relate To" DuVernay's and Array Alliance's Contacts with Illinois.

For a minimum contacts analysis, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), *as corrected* (May 12, 2014); *see also United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1047 (N.D. Ill. 2015) (among requirements for personal jurisdiction is that "contacts [with the forum state] bear on the substantive legal dispute"). Here, the relevant inquiry is DuVernay's and Array Alliance's contacts with Illinois *related to the Series*. In short, there are none.

DuVernay researched and wrote the Series from California, New York, and Georgia, directed the filming in New York and worked as a producer from California and New York. (DuVernay Decl. at 4.) She did not travel to Illinois in connection with the Series and did not contact anyone in Illinois in connection with the Series. (*Id*. at 5.)[3] Array Alliance's connections to the Series and Illinois are even fewer, as Array Alliance had no involvement in the creation or production of the Series, and has no offices or employees in Illinois. (*Id*. at ¶¶ 9, 11) Without any relevant suit-related contacts in Illinois, this Court cannot exercise personal jurisdiction over DuVernay and Array Alliance.

#### 2. DuVernay and Array Alliance Did Not "Purposefully Avail" Themselves of the Privilege of Conducting Activities in Illinois.

The Supreme Court's 2014 decision in *Walden v. Fiore* forecloses a finding of personal jurisdiction over DuVernay and Array under the due process clause. In finding that a Georgia

---

[3] The fact that DuVernay may have been to Illinois on other business (*id*. at ¶ 8) has no bearing on the personal jurisdiction analysis for this case.

6

defendant did not have sufficient minimum contacts with Nevada to be subject to personal jurisdiction there, the Court in *Walden* held that, "*the plaintiff cannot be the only link between the defendant and the forum.* Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 571 U.S at 285 (emphasis added).

The *Walden* Court clarified its decades-old decision in *Calder v. Jones*, 465 U.S. 783 (1984), which dealt with actress Shirley Jones's defamation claims against the National Enquirer, a Florida corporation, and the paper's reporter and editor, who were Florida residents, all of whom challenged the California state court's exercise of jurisdiction over them. *Id*. at 785-86. In *Calder*, the Supreme Court found jurisdiction existed in California under the "effects test" reasoning that: "*California is the focal point both of the story* and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." *Id*. at 789 (emphasis added). When reexamined in *Walden*, the Court explained that *Calder* was based on "the injury to the plaintiff's reputation in the estimation of the California public . . . *combined with the various facts that gave the article a California focus*[.]" 571 U.S. at 288 (emphasis added).

*Walden's* holding that "the plaintiff cannot be the only link between the defendant and the forum" is dispositive in this case. There is no other link between DuVernay Defendants and Illinois other than this lawsuit filed by Plaintiff. Significantly, in *Walden*, even though the defendant "allegedly directed his conduct at plaintiffs *whom he knew had Nevada connections*," the Supreme Court held that "did not create sufficient contacts with Nevada" to sustain jurisdiction. 571 U.S at 289 (emphasis added). Plaintiff alleges, without any support, that the "DuVernay Defendants knew that the effects of their defamatory and disparaging statements

7

about Reid and the Reid Technique would be felt by Reid in Illinois." (FAC at ¶ 86.) "That's exactly the sort of allegation the Justices deemed inadequate in *Walden*[.]" *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018).[4]

Further, as clarified in *Walden*, the critical combination of alleged harm to the plaintiff in California with additional "facts that gave the article a California focus" are utterly absent here. In *Calder*, California was the focal point of not only the harm suffered, but also *the story itself*.

> The allegedly libelous story concerned the *California activities* of a California resident. It impugned the professionalism of an entertainer whose *television career was centered in California.* The article was drawn from *California sources*, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.

*Calder*, 465. U.S. at 788-89 (emphasis added). The same cannot remotely be said of Illinois in this case. The Series focuses on five New York teenagers who were arrested by New York City police for a crime committed in Central Park, were tried in New York state court and served sentences in New York state prison. The Series has no relation to Illinois to satisfy personal jurisdiction under *Calder*.[5] The single fleeting reference to The Reid Technique in a nearly five-hour long Series is in no way comparable to *Calder* and in no way establishes an Illinois focus.

---

[4] Even pre-*Walden*, courts in the Seventh Circuit recognized that "a finding of injury in a forum state, without something else, is not adequate to confer jurisdiction." *Jackson v. California Newspapers P'ship*, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005); *see also e.g. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 447 (7th Cir. 2010) ("The cases that have found express aiming have all relied on evidence beyond the plaintiff's mere residence in the forum state."); *Hoffman v. Barnes*, No. 12 C 31, 2012 WL 1021837, at *4 (N.D. Ill. Mar. 26, 2012) ("The recent cases interpreting *Calder* consistently require 'something more' beyond residence of the plaintiff or injury in the forum state from an alleged intentional tort.").

[5] *See also, e.g., Busch v. Viacom Int'l, Inc.,* 477 F. Supp. 2d 764 (N.D. Tex. 2007) (finding no jurisdiction over Jon Stewart, where Texas resident sued Viacom and Stewart for defamation and misappropriation; production and filming of the challenged The Daily Show segment occurred in New York and "there are no allegations or a shred of evidence that Texas was the 'focal point' of the subject matter, or that the sources relied upon for the challenged broadcast were in Texas").

8

Following *Walden*, the Seventh Circuit and courts in this district have consistently dismissed defendants in cases where, as here, the plaintiff and plaintiff's alleged injury is the only connection to the forum. *See, e.g., Ariel Investments, LLC*, 881 F.3d at 521-22 ( "[t]he district court thought that Ariel Capital had set out to injure Ariel Investments, knowing that it is located in Illinois. That's exactly the sort of allegation the Justices deemed inadequate in *Walden*"; reversing denial of motion to dismiss).[6]

For instance, in *Advanced Tactical Ordnance Sys., LLC*, the Seventh Circuit reversed the district court's finding of personal jurisdiction that was based only on the fact that defendant "knew that [plaintiff] was an Indiana company and could foresee that its misleading emails and sales would harm [plaintiff] in Indiana." 751 F.3d at 802. The connection to Illinois is even weaker in this case, where Plaintiff admits it has a reputation with customers throughout the United States and even internationally. (FAC at ¶¶ 2, 19.) *See Jackson*, 406 F. Supp. 2d at 899 ("because plaintiff pleads injury to his national reputation, Illinois has a lesser interest in adjudicating the suit than it would if plaintiff was only pleading injury to his local Illinois reputation.").

As this Court observed in *Dobrowolski v. Intelius, Inc.*, "[c]onsidering [plaintiff's] arguments and changing a single variable—her residency (for example, Indiana instead of Illinois)—there would be absolutely nothing tying [defendant's] conduct to Illinois." No. 17 CV

---

[6] Many district court decisions are to the same effect. *See, e.g., Exam. Bd. of Prof. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 2018 WL 1744673, at *3 (N.D. Ill. Apr. 11, 2018) ("the Supreme Court has explicitly rejected the notion that mere injury to a forum resident is a sufficient connection to the forum"); *Chopra v. Naik*, 2017 WL 4339804, at *5 (N.D. Ill. Sept. 30, 2017) ("Plaintiffs have failed to establish that Defendants' conduct was expressly aimed at Illinois" where "there is nothing else, apart from [plaintiff's] injury, connecting [defendant's] actions to this forum"); *Bittman v. Fox*, 2015 WL 5612061, at *5 (N.D. Ill. Sept. 23, 2015) (no personal jurisdiction where "the plaintiff is the defendant's only connection to the forum state"); *Hoffman*, 2012 WL 1021837, at *4 (no personal jurisdiction where "there is no evidence of express aiming beyond the plaintiffs' mere residence in Illinois").

9

1406, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017) (Shah, J.) (granting dismissal). Unlike a case in which the Court has to determine whether the Defendants suit-related contacts with the forum are "fortuitous" and "attenuated", *Weller*, 312 F. Supp. 3d at 718. DuVernay and Array Alliance have *no* relevant contacts with Illinois. Under these facts, the exercise of personal jurisdiction over DuVernay and Array Alliance is wholly inappropriate and they should be dismissed.

### 3. Asserting Jurisdiction Over DuVernay and Array Alliance Would Offend Fair Play and Substantial Justice.

Because Plaintiff cannot show that this action arises out of DuVernay's and Array Alliance's contacts with Illinois or that DuVernay and Array Alliance purposefully availed themselves of doing business in Illinois, the exercise of personal jurisdiction over these Defendants—an individual and a non-profit—would offend fair play and substantial justice. The Seventh Circuit has held that merely making material accessible online "should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). That principle is even more apt in this case, where DuVernay and Array Alliance have no control over the Netflix's Internet distribution platform. (See DuVernay Decl. at ¶¶ 6, 11.)

Here, given Ms. DuVernay and Array Alliance's lack of contact with Illinois related to the Series, and the Series' New-York focus and total lack of connection to Illinois, the exercise of personal jurisdiction over DuVernay and Array Alliance is simply not compatible with due process. *See e.g. Bittman v. Fox*, No. 14 C 08191, 2015 WL 5612061, at *6 (N.D. Ill. Sept. 23, 2015) ("[I]t would indeed offend traditional notions of fair play and substantial justice to hale

into an Illinois court an online journalist who has no connection to the state merely because the subject of his article resides there"); *Sifuna v. Accreditation Council of Pharmacy Educ.*, No. 17 CV 0028, 2017 WL 5891224, at *6 (N.D. Ill. Nov. 28, 2017) (holding that the exercise of personal jurisdiction over foreign defendants "does not comport with traditional notions of fair play and substantial justice").

## CONCLUSION

Because Defendants DuVernay and Array have no suit-related contacts with Illinois, the exercise of personal jurisdiction over them in this Court would offend due process, and the Court should dismiss DuVernay and Array Alliance pursuant to Federal Rule of Civil Procedure 12(b)(2).

Dated:  November 26, 2019  Respectfully submitted,

DENTONS US LLP

/s/ Natalie J. Spears
One of the attorneys for Defendants

Natalie J. Spears
Gregory R. Naron
Jacqueline A. Giannini
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of November, 2019 a copy of the foregoing was filed electronically via the ECF filing system.

/s/ Natalie J. Spears